2203107
1/1/03 - 12/31/03

EFFECTIVE DATE: JANUARY 1, 2003

## AGREEMENT FOR MEDICAL SUPERVISION AND DIRECTION OF CLINICAL CARDIOVASCULAR SERVICES

### BY AND BETWEEN

HAMOT MEDICAL CENTER, of the City of Erie, Pennsylvania, a Pennsylvania nonprofit corporation (hereafter called "Hamot")

- AND -

MEDICOR ASSOCIATES, INC., 104 East Second Street, Erie, Pennsylvania 16507, a Pennsylvania professional corporation (hereafter called the "Corporation")

### WITNESSETH:

WHEREAS, Hamot is organized for the purpose of operating a healthcare facility, in which there is provision of medical care services open to all individuals in Hamot's service area, including clinical cardiovascular services; and

WHEREAS, the Corporation employs skilled and qualified physicians capable of directing the provision of clinical cardiovascular services at Hamot as specified by this Agreement; and,

WHEREAS, it is the intent of the parties that this Agreement constitute a "Personal Service Arrangement," as that term is used in 42 U.S.C. §1395nn(e)(3) and a "Personal Services" or "Management Contract," as that term is used in 42 C.F.R. §1001.952(d).

NOW, THEREFORE, in consideration of the mutual covenants herein contained and intending to be legally bound hereby, the parties hereto agree as follows:

## Section 1. Provision of Services by Corporation:

(a) The Corporation, through physicians retained by it, shall provide the services of medical supervision and direction of rehab/restorative cardiovascular services at Hamot (the "Services"), as set forth in the description of duties attached hereto and incorporated by reference herein as Exhibit A.

(b) The Services shall be provided for no fewer than 400 hours per year. Scheduling shall be arranged between Hamot and the Corporation. All Services shall be provided at such locations as Hamot shall designate.

## Section 2. Requirements for Corporation Physicians:

(a) All Services shall be provided by physicians who are shareholders, employees, or otherwise retained and paid by the Corporation ("Corporation Physician").

(b) In order to be deemed qualified to provide Services during the term of this Agreement, a Corporation Physician shall:

   (i) Remain a licensed physician under the laws of the Commonwealth of Pennsylvania and abide by any rules and regulations issued by any administrative body with respect to said license.

   (ii) Maintain in good standing all other permits, licenses, certifications, approvals or the like which are necessary to the Corporation Physician's continued full and effective practice of medicine, including without limitation requirements regarding the prescription of medications.

   (iii) Meet and continue to meet the criteria for active medical staff appointment set forth in Hamot's medical staff handbook and remain a member in good standing of the medical staff.

   (iv) Apply for and maintain clinical privileges at Hamot commensurate with the procedures to be performed in rendering Services pursuant to this Agreement.

   (v) Comply with the bylaws, rules and regulations, policies and directives of Hamot's medical staff and with those rules and policies of Hamot applicable to non-employees (e.g. no smoking policy, security regulations, etc.).

   (vi) Remain satisfactory to Hamot in the performance of the Services pursuant to this Agreement.

   (vii) Serve on committees of, and play an active role in, Hamot's medical staff.

    (viii)    Demonstrate at all times customer service behaviors and the core values of quality, compassion, respect, service, integrity, cooperation, teamwork, and professionalism.

If, at any time, a Corporation Physician fails materially, in the reasonable judgment of Hamot, to meet any of these requirements and the Corporation fails, within ten (10) days of notification by Hamot, to provide a substitute Corporation Physician who meets the above qualifications and is acceptable to Hamot, Hamot may, at its option, terminate this Agreement effective immediately.

(c)     It is agreed by Hamot that, at the present time, Tullio Emanuele, M.D. satisfies all of the above qualifications and is acceptable to Hamot to provide the Services. The Corporation has therefore designated Tullio Emanuele, M.D. to act as the primary Corporation Physician to perform Services under this Agreement. Should Tullio Emanuele, M.D. be unable, unwilling or unavailable to provide the Services, the Corporation may substitute any other Corporation Physician who meets the above qualifications and is acceptable to Hamot as evidenced by its advance written approval. Notwithstanding anything herein to the contrary, Hamot may at all times rely on the Corporation Physician who acts as the primary provider of the Services hereunder as spokesperson for the Corporation in the performance of its duties hereunder.

## Section 3. Compensation:

(a)     Hamot shall pay the Corporation the sum of Seventy-Five Thousand Dollars ($75,000) annually in equal monthly installments of Six Thousand Two Hundred Fifty Dollars ($6,250) for all of the Services provided pursuant to this Agreement.

(b)     The Corporation agrees to keep records adequate to verify the Services provided pursuant to this Agreement and to make such records available to Hamot at such times as Hamot may reasonably request.

(c)     Hamot shall report to the Internal Revenue Service and to such state and local taxing authorities as may be applicable any amounts paid to the Corporation pursuant to this Agreement as having been paid in the year received, pursuant to IRS Form 1099 or similar forms used for such purposes.

(d)     The Corporation's compensation shall not vary based on the volume or value of any referrals or other business generated between the parties.

## Section 4. Billing for Professional Services:

Under no circumstances shall the Corporation or any Corporation Physician bill any patient or third-party reimbursement program for any services for which the Corporation has been reimbursed pursuant to this Agreement.

3

To the extent permitted by applicable laws, regulations and payor policies including, but not limited to, the 1996 Teaching Physician Billing Regulations and Intermediary Letter 372, the Corporation shall have the right to bill for any direct patient care services a Corporation Physician provides to patients in the course of providing Services. Any such billing and collection for professional services shall be conducted by, and at the sole expense of, the Corporation. The fees for services provided by the Corporation shall be reasonable and shall not exceed any limitations imposed by law.

### Section 5. Insurance:

The Corporation, at its sole expense, agrees to obtain and maintain in full force and effect during the term of this Agreement appropriate malpractice insurance covering each Corporation Physician with such minimum limits as required by the Commonwealth of Pennsylvania, and provide Hamot with certificates of said insurance. Corporation shall require any insurance carrier providing such malpractice insurance to provide Hamot with at least ten (10) days written notice of cancellation, termination or expiration of any such insurance. If said coverage is cancelled for any reason whatsoever: (a) the Corporation agrees to notify Hamot within seventy-two (72) hours of such cancellation; and, (b) Hamot may terminate this Agreement by giving written notice to the Corporation, which termination shall be effective immediately.

### Section 6. Facilities and Personnel:

Hamot shall provide all of the supplies, equipment and non-physician personnel which Hamot deems necessary for the provision of Services. Non-physician personnel will be recruited by and be subject to the personnel policies of Hamot.

### Section 7. Term and Termination:

(a) The term of this Agreement shall begin on January 1, 2003 (the "Commencement Date") and shall continue through December 31, 2003, at which time this Agreement shall terminate automatically, unless the parties have agreed in writing to an extension or renewal.

(b) In the event that either party defaults in the performance of any obligation under this Agreement and fails to cure such default within thirty (30) days following receipt of written notice of the default, the party not in default shall have the right to terminate this Agreement immediately. In addition, if the Corporation engages in any action or course of conduct (including by failure to act) which creates a risk or harm to patients, Hamot may terminate this Agreement immediately, without any notice or opportunity to cure.

(c) In the event of a change in the Medicare or Medicaid statutes, regulations, or general instructions (or in the application thereof), the adoption of new legislation, or a change in any other third-party payor reimbursement system, or any similar legal development, any of which materially affects the payment or reimbursement which may be received for any services furnished or contemplated

under this Agreement, or otherwise significantly affecting the relationship between the parties, either party may propose modifications to this Agreement which satisfactorily address the new development. If notice of such proposed modifications is given and if Hamot and Corporation are unable, within thirty (30) days thereafter, to agree upon a new basis for operation, either party may terminate this Agreement by at least thirty (30) days written notice to the other party. Termination shall be effective at the expiration of such thirty (30) day period, or such later time as is specified in the notice.

## Section 8. Information and Hospital Records:

All records pertaining to the provision of Services shall be and remain the property of Hamot and shall at all times be freely available for the use of the Corporation and the Corporation Physician: *Provided, however,* that such records may not be removed from Hamot without Hamot's written consent. Neither the Corporation nor the Corporation Physician shall disclose information relating to Hamot's operations to persons other than Hamot's Board, management or medical staff, or such governmental or private accreditation or licensing bodies or third-party reimbursement agencies with whom Hamot has directed or authorized him, her or them to deal, unless Hamot gave specific written consent for the release of information. The above shall be deemed to include patient records and all other information kept in the normal operation of Hamot.

## Section 9. Independent Contractor Status:

(a) It is understood and agreed that the relationship between Hamot and the Corporation hereunder is and shall remain one of independent contractorship. Hamot shall not withhold or in any way be responsible for payment of any federal, state, or local income or occupational taxes, FICA taxes, unemployment compensation, or workers' compensation contributions, vacation pay, sick leave or retirement benefits or any other payments for or on behalf of any Corporation Physician. All such payments and/or withholdings are the responsibility of the Corporation and the Corporation shall indemnify and hold Hamot harmless from any and all loss or liability arising with respect to such payments and/or withholdings.

(b) No Corporation Physician shall be considered an employee of Hamot for any purpose whatsoever and no Corporation Physician shall be eligible to receive or participate in any benefits or benefit programs offered by Hamot to its employees. It is agreed and understood that Corporation Physicians are not eligible for, nor does Hamot pay any premiums for, health, hospitalization, surgical or life insurance, nor for participation in any retirement program, nor for malpractice insurance coverage.

(c) Nothing in this Agreement shall be deemed to constitute the parties hereto as joint venturers, partners, or acting as other than independent contractors. Each party agrees to be responsible only for the acts of its own agents, servants, or

5

employees, when acting within the scope of their agency or employment in performing this Agreement.

(d) In rendering Services, the Corporation Physician shall at all times abide by the standards of medical practice as applicable to the type of medical care to be provided by the Corporation Physician. In providing Services hereunder, a Corporation Physician shall exercise his/her professional judgment, guided by applicable professional standards, and nothing contained herein shall be construed as permitting Hamot to exercise any control over the independent professional judgment of the Corporation Physician in providing professional services.

## Section 10. Compliance with Law:

(a) The parties shall comply with all applicable statutes, rules, regulations and standards of any and all governmental authorities and regulatory and accreditation bodies relating to physicians and hospitals, to the provision of teaching services, and to the use of hazardous materials, and will maintain performance and competency needed to provide services hereunder. The Services performed under this Agreement do not involve the counseling or promotion of a business arrangement or other activity that violates state or federal laws.

(b) If any term or condition of this Agreement becomes violative of the rules, regulations or reimbursement policies of any third-party reimbursement program, any federal or state statute (including but not limited to 42 U.S.C. §1302a-7b(b) or 42 U.S.C. §1395nn), rule, regulation (including but not limited to the failure to satisfy any available safe harbor promulgated pursuant to Section 14 of Pub. L. 100-93 or Section 13562 of Pub.L. 103-66) or administrative or judicial decision, or jeopardizes Hamot's status as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, Hamot and Corporation shall use their best efforts to alter the terms or conditions of this Agreement so that it no longer violates said rule, regulation or reimbursement policy of a third-party reimbursement program, federal or state statute, rule, regulation or administrative or judicial decision in questions, no longer fails to satisfy such available safe harbor, or no longer jeopardizes Hamot's status as a 501(c)(3) organization. Notwithstanding the foregoing, in the event the parties are unable to mutually agree upon modifications of this Agreement, as called for above, either party may terminate this Agreement upon thirty (30) days written notice.

## Section 11. Medicare Access to Books and Records:

In the event, and only in the event, that Section 952 of P.L. 96-99 (42 U.S.C. Section 1395x(v)(1)(I)) is applicable to this Agreement, the Corporation agrees as follows:

(a) Until the expiration of four (4) years after the furnishing of such services pursuant to this Agreement, the Corporation shall make available, upon written request to the Secretary of the Federal Department of Health and Human Services or upon

6

        request to the Comptroller General of the United States, or any of their duly authorized representatives, this Agreement, and books, documents and records of the Corporation that are necessary to verify the nature and extent of the cost of Services provided pursuant to this Agreement.

(b)     If the Corporation carries out any of the duties of this Agreement through subcontract, with a value of $10,000 or more over a twelve (12) month period, with a related organization, such subcontract shall contain a clause to the effect that until the expiration of four (4) years after the furnishing of such services pursuant to such subcontract, the related organization shall make available, upon written request to the Secretary of the Federal Department of Health and Human Services or upon request to the Comptroller General of the United States, or any of their duly authorized representatives, the subcontract, and books, documents and records of such organization that are necessary to verify the nature and extent of the cost of services provided pursuant to such subcontract.

### Section 12. Dispute Resolution:

In the event of any unresolved dispute between the parties of this Agreement, notice in writing shall be given to either the Corporation or Hamot's Vice President for Medical Staff Affairs, as appropriate, expressing the basis of the dispute and the recommended course of action. The party receiving such notice shall make a written response within fifteen (15) days following receipt of notice. Should the dispute not be resolved to the satisfaction of the initiating party, the matter may be appealed in writing to the Chairman of the Board of Directors of Hamot within fifteen (15) days following receipt of the written response.

The Board of Directors or its designated representative(s) shall render a written judgment within forty-five (45) days following receipt of the appeal. If the Corporation is not satisfied with the judgment of the Board of Directors, the Corporation may demand that the dispute be settled by arbitration, which shall be conducted in Erie, Pennsylvania, in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Each party shall bear the expenses of its attorney in any such arbitration; however, all other costs of the arbitration shall be borne equally by both parties.

### Section 13. Assignment:

This Agreement may not be assigned by either party, without the express written consent of the other party.

### Section 14. Amendments:

This Agreement may be amended at any time by mutual agreement of the parties, provided that before any amendment shall be operative or valid it shall have been reduced to writing and signed by both parties.

### Section 15. Strict Performance:

No failure by either party to insist upon the strict performance of any covenant, agreement, term or condition of this Agreement or to exercise a right or remedy shall constitute a waiver. No waiver of any breach shall affect or alter this Agreement, but each and every covenant, condition, agreement and term of this Agreement shall continue in full force and effect with respect to any other existing or subsequent breach.

### Section 16. Governing Law:

This Agreement shall be interpreted, and the relationship between the parties governed, exclusively by the laws of the Commonwealth of Pennsylvania, excluding any choice of law provisions which would direct the application of the laws of a different jurisdiction.

### Section 17. No Third-Party Rights:

Nothing in this Agreement shall be construed as creating or giving rise to any rights in any third-parties or any persons other than the parties hereto.

### Section 18. Construction of Headings:

The captions or headings are for convenience only and are not intended to limit or define the scope or effect of any provision of this Agreement.

### Section 19. Entire Agreement:

There are no other agreements or understandings, either oral or written, between the parties affecting this Agreement, except as otherwise specifically provided for or referred to herein. This Agreement cancels and supersedes all previous agreements between the parties relating to the subject matter covered by this Agreement. No change or addition to, or deletion of, any portion of this Agreement shall be valid or binding upon the parties hereto unless the same is approved in writing by the parties.

[SIGNATURES ON NEXT PAGE]

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective beginning on the day and year first written above.

**HAMOT MEDICAL CENTER**

_____  
Witness

_____  
Joseph R. McClellan, MD  
Executive Vice President, Clinical Operations

10/20/02  
Date

**MEDICOR ASSOCIATES, INC.**

_____  
Witness

_____  
Charles M. Furr, M.D.  
President

12/18/02  
Date

**APPROVED BY:**

_____  
A.E. Hammond  
Controller

RISK:\USER\fgebb\Contracts\Medicor\Emanuele Jan 2003

9

EXHIBIT A

# HAMOT MEDICAL CENTER

## DESCRIPTION OF SERVICES:
## MEDICAL SUPERVISION AND DIRECTION OF
## CLINICAL CARDIOVASCULAR SERVICES

FUNCTIONS:

1. Facilitate the establishment and implementation of best practices among colleagues based upon outcomes data and established benchmarks, utilizing case management staff, service line leaders, and others as appropriate.

2. Monitors clinical care and outcomes measures in designated service line, develops and initiates forums/opportunities to discuss and improve clinical outcomes with medical staff, case management, and others as appropriate. Actively intervening when necessary.

    - Facilitates pre-op process/LOS
    - Facilitates care management/ Diagnostics, Monitoring (telemetry), Intervention, etc.
    - Facilitates post-procedure discharge/LOS
    - Interacts with colleagues to achieve appropriate problem resolution.

3. Responds to request for guidance and/or direction from service line leader, case management staff and others as may be necessary.

    - Participates in the development and implementation of clinical pathways, protocols, guidelines and disease management programs as appropriate (Chest Pain Unit, Post-Intervention Unit, Congestive Heart Failure Unit).

4. Works closely with appropriate Service Line Leader in establishing and managing adherence to established budgets.

    - Supplies timely and appropriate input/reviews/requests to service line leader and/or unit managers for new technology or other capital requests.
    - Assists in the establishment, implementation and adherence to service delivery schedules (cath lab, stress testing, etc.)