IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| ex rel. TULLIO EMANUELE, M.D., | : | |
| | : | |
| **Plaintiff-Relator,** | : | |
| | : | |
| v. | : | Civil No.  1:10-cv-00245-SJM |
| | : | |
| MEDICOR ASSOCIATES, INC., et al., | : | |
| | : | |
| **Defendants.** | : | |

**BRIEF IN SUPPORT OF RELATOR'S MOTION FOR SANCTIONS
AGAINST DEFENDANT HAMOT MEDICAL CENTER**

As discussed below, Defendant Hamot Medical Center ("Hamot") has failed to comply with the Court's July 25, 2014 Order requiring Hamot to answer Relator's Interrogatory No. 1. Hamot's response provides almost **none** of the information required by the Court's order, and cannot in any way be considered a good faith attempt to comply with such order.  Indeed, it is difficult to conceive of an interrogatory response calculated to provide **less** information. Accordingly, Relator respectfully requests that the Court sanction Hamot for its willful failure to comply with the Court's Order.

1.  Facts.

On April 3, 2014, Relator served Hamot with Relator's second interrogatories. Interrogatory No. 1 asked Hamot the following:

> Do you contend that, at the time you entered into any contractual or other arrangement with Medicor, or at any time thereafter, you had a good faith belief that such arrangement, or the subsequent submission of claims for services rendered pursuant to referrals from Medicor, complied with the Anti-Kickback Statute or the Stark Law? If so, please (i) state the basis for such belief, (ii) state whether you relied in any way upon the advice of counsel in forming such belief, (iii) identify every communication to or from any counsel relating to such arrangement, and (iv) identify every document you reviewed, considered, or relied upon in forming such belief.

Doc. 149-1, p. 6-7. The term "you" was defined to include Hamot, its officers, agents, and employees, and anyone acting on its behalf. *Id*., p. 1-2. Thus, the interrogatory plainly asked whether Hamot contended that it (including any of its officers, agents, employees, or other persons acting on its behalf) had such good faith belief, and if so, the basis for such belief.

When Hamot failed to answer the interrogatory, Relator filed a motion to compel. The Special Master issued his report on June 16, 2014, recommending that Relator's motion be granted in large part, and Hamot filed no objections to this report. Doc. 153. On July 25, 2014, the Court entered an Order adopting the Special Master's report and granting the motion to compel in part. In relevant part, the Order provided as follows:

> 2.  Unless Hamot serves and files written notice that it does not intend to rely on the advice of counsel in connection with any claim or defense of this action on or before August 4, 2014, it must fully answer Interrogatory No. 1, including all subparts, on or before August 11, 2014.
>
> 3.  If Hamot files written notice that it does not intend to rely on the advice of counsel in connection with any claim or defense of this action, **Hamot shall answer Interrogatory No. 1, except subparts (ii) and (iii), on or before August 11, 2014**, and Hamot shall be **precluded from relying on advice of counsel in connection with any claim or defense or introducing evidence of advice of counsel at trial**.

Order, Doc. 157, p. 1-2 (emphasis added).

On August 4, 2014, Hamot filed a written notice in response to the Court's order, stating as follows:

> At this time, Hamot does not intend to attempt to prove a defense to the claims as alleged in Relator's Amended Complaint by relying on any otherwise privileged advice Hamot may have received from counsel. Hamot reserves the right, however, to introduce facts regarding the role that its attorneys, law firms and other consultants retained by and through counsel played in the negotiation, drafting and valuations related to the transactions at issue in this case.

Doc. 160, p. 1. On August 11, 2014, Hamot provided its response to Interrogatory No. 1. *See* Exhibit 1. Hamot's complete response is as follows:

2

> Hamot objects to the Interrogatory as seeking non-discoverable information regarding communications and work product created and exchanged by and between Hamot and its attorneys and consultants engaged through counsel, and because the Interrogatory seeks a legal conclusion. Hamot further objects to any request for information postdating May 31, 2005 or relating to claims submitted on or before October 8, 2004, as no such request could be reasonably calculated to lead to the discovery of admissible evidence.[1]
>
> Subject to and without waiving these objections, by way of further response and as instructed in the Court's July 25, 2014 Order, with respect to the first part of this Interrogatory Hamot did at all times relevant maintain "a good faith belief" that all arrangements between Hamot and Medicor, and any subsequent submission of claims for services rendered pursuant to referrals from Medicor, complied with the Anti-Kickback Statute and the Stark Law. Hamot is not at this time asserting an advice of counsel defense, and does not intend to attempt to prove a defense to Relator's allegations by relying on any otherwise privileged advice Hamot may have received from counsel.
>
> Hamot did engage various attorneys, law firms and other consultants retained by and through counsel in the negotiation, drafting and valuations related to the transactions at issue in this case. By way of example, see documents labeled UPMCHAMOT1-00095-99, 3837-43, 7346-50 and 7358-60. In addition to these documents, Hamot has been identifying and will continue to identify any additional responsive items it believes to be privileged via an appropriate privilege log, which is expressly incorporated into this Response by reference and which will be updated accordingly upon the discovery of any additional responsive information. Hamot reserves the right to introduce facts regarding the role that its attorneys, law firms and other consultants retained by and through counsel played in the negotiation, drafting and valuations related to the transactions at issue in this case. In addition, Hamot reserves the right to seek relief from the Court's July 25, 2014 Order, ECF Doc. No. 157, to the extent that additional information arises or Relator amends his claims or legal position(s) as this case progresses.

Exhibit 1, p. 4-5; *see also* Exhibit 2 (Bates-numbered documents referenced by Hamot).

---

[1] As Hamot was aware when it served its response, the Court had repeatedly rejected its objections to the temporal scope of discovery, including as recently as July 29, 2014, when it upheld the Special Master's report regarding the <u>other</u> motion to compel Defendants have forced Relator to file.  *See* Memorandum Opinion, Doc. 158, p. 3 ("It is disingenuous to claim that the court's ruling on the temporal scope of discovery was merely 'preliminary.'").  It seems a bit contemptuous to assert, in response to a Court order compelling an answer to an interrogatory, an objection that had already been expressly rejected by the Court.

Hamot's response does not come close to satisfying the Court's Order, as it provides almost none of the information the Court ordered Hamot to provide. Indeed, no one could look at Hamot's response and come away with any understanding of why Hamot allegedly believed that any of the numerous contractual arrangements with Medicor, entered into over a period of a decade or more, complied with either the Stark Law or the Anti-Kickback Statute.

2. <u>Hamot contends that it filed the notice required by paragraph 2 of the Court's Order, and is therefore "precluded from relying on advice of counsel in connection with any claim or defense or introducing evidence of advice of counsel at trial."</u>

In paragraph 2 of its July 25, 2014 Order, the Court ordered as follows:

> Unless Hamot serves and files written notice that it does not intend to rely on the advice of counsel in connection with any claim or defense of this action on or before August 4, 2014, it must fully answer Interrogatory No. 1, including all subparts, on or before August 11, 2014.

Order, Doc. 157, ¶ 2. In paragraph 3, the Court ordered that

> If Hamot files written notice that it does not intend to rely on the advice of counsel in connection with any claim or defense of this action, Hamot shall answer Interrogatory No. 1, except subparts (ii) and (iii), on or before August 11, 2014, and **Hamot shall be precluded from relying on advice of counsel in connection with any claim or defense or introducing evidence of advice of counsel at trial**.

*Id*., ¶ 3 (emphasis added).

In its August 4, 2014 Notice, Hamot did not simply provide an unambiguous statement that it "does not intend to rely on the advice of counsel in connection with any claim or defense of this action," as called for by the Court's Order. Instead, it provided a deeply ambiguous statement that was apparently designed to leave all options on the table:

> **At this time**, Hamot does not intend to attempt to **prove a defense** to the claims as alleged in Relator's Amended Complaint by relying on any **otherwise privileged** advice Hamot may have received from counsel. **Hamot reserves the right**, however, to introduce facts regarding the role that its attorneys, law firms and other consultants retained by and through counsel played in the negotiation, drafting and valuations related to the transactions at issue in this case.

4

Doc. 160, p. 1 (emphasis added).  Hamot thus appeared to reserve the right (i) to change its mind, (ii) to rely on advice of counsel that is not "otherwise privileged," (iii) to rely on advice of counsel for purposes other than to "prove a defense," such as negating an essential element of Relator's case (i.e., knowledge), and (iv) to introduce evidence regarding the role that its attorneys played in the various transactions.  Accordingly, the notice did not appear to clearly state that Hamot "does not intend to rely on the advice of counsel in connection with any claim or defense of this action," as required by the Court's Order, meaning that Hamot was required to fully respond to all subparts of the interrogatory.

However, during a meet and confer discussion on August 18, 2014, counsel for Hamot unequivocally stated that it was Hamot's position that the August 4 notice complied with paragraph 2 of the Court's Order, and that Hamot was therefore not required to answer subparts (ii) and (iii) of the interrogatory.  Under the terms of the Court's Order, therefore, Hamot is "precluded from relying on advice of counsel in connection with any claim or defense or introducing evidence of advice of counsel at trial."  Order, Doc. 157, p. 1-2.  Accordingly, Hamot cannot present any evidence of advice of counsel, nor can it rely on any such advice to defend against Relator's claims.

3.  <u>Hamot has not responded to subparagraph (i) of the interrogatory, which required Hamot to state the basis for its supposed belief</u>.

As the Court is aware, there have been numerous different contractual arrangements between Hamot and Medicor from 1998 through the present, covering a wide variety of subjects, including various medical directorships, on-call agreements, regional outreach agreements, regional affiliate agreements, real estate transactions, and other arrangements, each with its own specific terms and monetary payments.  *See* Exhibits 3-5 for examples of such contracts.  In its interrogatory response, Hamot stated that:

5

> Hamot did **at all times** relevant maintain 'a good faith belief' that **all arrangements** between Hamot and Medicor, and **any subsequent submission of claims** for services rendered pursuant to referrals from Medicor, complied with the Anti-Kickback Statute and the Stark Law.

Exhibit 1, p. 4 (emphasis added).  The Court's Order required Hamot to fully answer subpart (i) of the interrogatory, which required Hamot to "state the basis for such belief."  *See* Order, Doc. 157, ¶¶ 2, 3.

Even a cursory glance at Hamot's response shows that Hamot completely failed to state the basis for its alleged belief that "all arrangements" with Medicor "at all times" complied with the AKS and Stark Law.  Indeed, there is not a **single statement** anywhere in the response along the lines of "Hamot believed the arrangements complied with the Stark Law because …," or "Hamot believed the arrangements complied with the Anti-Kickback Statute because …."  Still less is there any statement as to why Hamot supposedly believed that any **particular** arrangement complied with either of the statutes.  No one could look at Hamot's response and say, "Ah, so THAT's why Hamot believed that the July 1, 2006 Regional Outreach Services Agreement complied with the Stark Law."  *See* Exhibit 3.  Nor could someone look at Hamot's response and say, "Oh, THAT's why Hamot believed the October 1, 2007 Addendum to Call Coverage Agreement complied with the Anti-Kickback Statute."  *See* Exhibit 4.  The same applies to any of the numerous medical directorship contracts entered into over the years, or to any of the post-2007 agreements that Hamot is only now starting to produce.  *See*, *e.g*., Exhibit 5.  Looking at Hamot's response, no one could tell why Hamot believed that **any** of such contracts complied with the Stark Law or the Anti-Kickback Statute, much less **all** of them.

Indeed, Hamot does not even provide generic statements of possible reasons it **might** have believed that any of the arrangements complied with either of the statutes.  Did Hamot believe that any of the numerous contractual arrangements it entered into with Medicor over the

6

years complied with all the elements of a statutory exception under the Stark Law, or a safe harbor under the Anti-Kickback Statute? If so, which contracts does it believe complied with which safe harbors or exceptions, and why? Did Hamot believe that the remuneration provided under any of such contractual arrangements constituted fair market value? If so, which remuneration, and why did Hamot believe that? Hamot does not deign to provide any of this information, leaving Relator to guess as to why it supposedly believed that any of the arrangements (much less all of them) complied with the two statutes.

The closest Hamot comes to providing a "basis" for its alleged belief is its vague statement that "Hamot did engage various attorneys, law firms and other consultants retained by and through counsel in the negotiation, drafting and valuations related to the transactions at issue in this case," followed by the incredible statement that "Hamot **reserves the right** to introduce facts regarding the role that its attorneys, law firms and other consultants retained by and through counsel played in the negotiation, drafting and valuations related to the transactions at issue in this case." It is absurd that Hamot believes it can respond to a Court Order requiring it to "state the basis" for its alleged belief by asserting that it "reserves the right" to present evidence of undisclosed facts at a later time. If the "role" played by its supposed "attorneys, law firms and other consultants retained by and through counsel" was the basis for Hamot's alleged belief that "all" arrangements with Medicor "at all times" complied with Stark and AKS, then Hamot was required to explain exactly what that "role" was and how it supposedly led to Hamot's alleged good faith belief – not to simply "reserve the right" to disclose such facts at a later time.

Hamot does not bother stating how (or even whether) the alleged engagement of any such unidentified persons caused Hamot to believe that any arrangement with Medicor complied with either Stark or AKS. Hamot does not purport to identify these various "attorneys, law firms and

7

other consultants," does not state when these persons were supposedly engaged, does not state which (if any) of the dozens of different contractual arrangements they allegedly reviewed, does not state what (if any) information was provided by such persons to Hamot, and does not state what (if anything) they told Hamot that could have caused Hamot to believe that any (much less all) of its arrangements with Medicor complied with Stark and AKS.  Moreover, as discussed above, the Court's Order clearly provides that "Hamot is precluded from relying on advice of counsel in connection with any claim or defense or introducing evidence of advice of counsel at trial." Hamot does not state that it had any independent understanding of the requirements of the Stark Law or AKS, separate from any advice of counsel.  Relator is thus left wondering what, other than the advice of counsel it cannot rely on, was the supposed basis for Hamot's alleged belief that any (much less all) of the arrangements with Medicor complied with Stark or AKS – and Hamot's response does nothing to clear this up.[2]

The **only** factual information Hamot supplies is the statement that, "[b]y way of example, see documents labeled UPMCHAMOT1-00095-99, 3837-43, 7346-50 and 7358-60."  Exhibit 1, p. 5.  However, the Court did not require Hamot to give an "example" of documents that might be relevant, but ordered it to give a full answer to the interrogatory. Moreover, the "examples" cited by Hamot consist solely of three letters containing advice of counsel, none of which is dated after February 23, 1999:

> (i) a December 28, 1998 letter from Foley & Lardner to Dr. Joe McClellan outlining certain "legal issues involved in the development of a Heart Center at Hamot Medical Center," and specifically discussing the Stark Law and Anti-Kickback Statute;

---

[2] In an August 18, 2014 meet-and-confer teleconference, Relator's counsel asked Hamot's counsel to point to any facts in the interrogatory response that stated a basis, other than advice of counsel, for Hamot's alleged belief, and Hamot's counsel merely responded that you had to look at the response as a whole.  It is thus clear that Hamot is playing games, rather than attempting in good faith to comply with the Court's order that it state the basis for its alleged belief.

8

>(ii) a December 28, 1998 letter from Foley & Lardner to Dr. McClellan describing "typical compensation ranges associated with various hospital medical directorships," advising Hamot that "these compensation levels assume a certain documentable time commitment on behalf of the physicians, which may vary from directorship to directorship and site to site," and recommending that Hamot should consult the MGMA directorship salary survey; and
>
>(iii) a February 23, 1999 letter from Foley & Lardner to Dr. McClellan "outlin[ing] the legal issues associated with the proposed Hamot Heart Institute," and specifically discussing the Stark Law and "fraud and abuse laws" (e.g., the AKS).

*See* Exhibit 2.  These letters are the **only** actual facts identified by Hamot in response to the Court's order that it "state the basis" for its alleged belief that "all" contractual arrangements with Medicor (including those entered into a decade later) complied with Stark and AKS.  And as discussed above, these letters unquestionably constitute advice of counsel, which Hamot is precluded from introducing or relying on pursuant to the Court's July 25 Order.  Thus, unless Hamot concedes that, except for these three letters (which it cannot introduce or rely on), it had **no basis whatsoever** to believe that the various arrangements entered into with Medicor over the years complied with Stark or AKS, it has manifestly failed to comply with this Court's order to provide a full response to subpart (i) of the interrogatory by stating the basis for its alleged belief.[3]

Moreover, Hamot does not bother to identify a **single officer, employee, or other individual** acting on its behalf who allegedly had a good faith belief that any of the numerous arrangements with Medicor complied with Stark or AKS, much less the basis for any such belief.  This is astounding, since Hamot initially objected that the interrogatory was "not capable of being answered as currently phrased, because the Interrogatory does not identify the individual

---

[3] Indeed, it is not even clear whether Hamot's reference to these three letters was intended to be a statement of the factual basis for Hamot's supposed belief.  During the August 18 teleconference, Relator's counsel pressed Hamot's counsel as to whether Hamot was relying on these three letters as the basis for its supposed belief, and Hamot refused to give a clear yes-or-no answer.

9

person(s) who formed or may have formed the belief in question." *See* Doc. 149-2, p. 4. In responding to the motion to compel, Hamot expressly told the Court that:

> Hamot, as an entity, is incapable of forming a belief; **it therefore must have formed a belief through one of its "present and former officers, agents, and employees**, and all other persons acting on behalf of [Hamot], its successors, predecessors, divisions, subsidiaries, or affiliates."

Doc. 150, p. 11 (emphasis added). By Hamot's own admission, therefore, it is impossible to state the basis for Hamot's alleged belief **without** identifying the person or persons who allegedly formed the belief in question. Relator pointed out the importance of this issue in his motion to compel, stating that:

> If Hamot contends that it had a good faith belief in the legality of its conduct, then, by definition, it must know **why** it is making such contention – i.e., it must know whose knowledge supposedly forms the basis for such contention.
> …
> Relator is not required to **guess** which individuals at Hamot might possess knowledge that forms the factual basis for any contention by Hamot that it had a good faith belief in the legality of its conduct – rather, **Hamot** is required to identify those individuals, if any, whose knowledge forms the basis for its contention.

Doc. 152, p. 3-4 (emphasis in original). Nevertheless, after telling the Court that it was impossible to answer the interrogatory **without** identifying specific individuals who formed the belief in question, Hamot **proceeded to do just that** – asserting that it had a good faith belief without identifying any individuals who supposedly formed such belief. This is not a good faith attempt to "state the basis for such belief," as required by the Court's Order. It seems clear that Hamot's "response" represents a deliberate effort to obscure rather than enlighten.

4. <u>Hamot has not responded to subpart (iv) of the interrogatory, which required it to identify every document it reviewed, considered, or relied upon.</u>

Hamot was also ordered to answer subpart (iv) of the interrogatory, which required it to "identify every document you reviewed, considered, or relied upon in forming such belief" (i.e., the alleged belief that "all" arrangements with Medicor, and the subsequent submission of any

10

claims for payment, complied with Stark and AKS). Order, Doc. 157, ¶¶ 2, 3. The identification of such documents is critical, since knowing what information Hamot considered allows Relator to test whether Hamot actually had a reasonable basis for its supposed belief that the various different arrangements with Medicor complied with Stark and AKS – or, indeed, whether Hamot received any information that would indicate that such belief was not warranted. Incredibly, however, nowhere in its interrogatory response does Hamot even **purport** to tell Relator what documents it reviewed, considered, or relied upon in forming its alleged belief in the legality of the various arrangements with Medicor. Nowhere in the response does Hamot state anything along the lines of "Hamot reviewed, considered, and/or relied upon the following documents in forming its belief: …"

Indeed, the only documents that are identified **at all** are the December 28, 1998 and February 23, 1999 letters discussed above – and even then, Hamot doesn't state whether it "reviewed, considered, or relied upon" such letters in forming its alleged belief that the arrangements entered into with Medicor over the next decade or more complied with Stark or AKS. Moreover, as discussed above, these letters are unquestionably advice of counsel, and Hamot is thus precluded from relying on or introducing such letters into evidence. Unless Hamot concedes that it did not review, consider, or rely upon any document **other** than these three letters (which it cannot introduce or rely on) in forming its alleged belief that the various arrangements with Medicor from 1998 to the present complied with Stark and AKS, then it has manifestly failed to comply with this Court's order to provide a complete response to subpart (iv) of the interrogatory.[4]

---

[4] Hamot's statement that it "has been identifying and will continue to identify any additional responsive items it believes to be privileged via an appropriate privilege log" does not amount to compliance with the Court's Order. To begin with, the mere listing of documents on a privilege

11

6.     <u>Hamot should be sanctioned</u>.

When faced with a Court Order requiring a party to respond to an interrogatory asking it to state the basis for its supposed belief that numerous and widely varied contractual arrangements entered into over a period of a decade or more were in compliance with the Stark Law or the Anti-Kickback Statute, one would expect the party to make at least a passing attempt to explain why it believed such contracts in fact complied with such statutes.  Similarly, when faced with a Court Order requiring it to identify all documents it reviewed, considered, or relied upon in forming such belief, one would expect the party to say, "We reviewed, considered, or relied on the following documents …."  Rather than doing so, Hamot crafted a lawyerly answer that was designed more to obscure than to enlighten, and that completely failed to explain why Hamot believed that **any** of the agreements with Medicor complied with **either** of the two statutes at issue, or to state what information Hamot considered in supposedly forming such belief.  There is no way to describe this other than as a willful refusal to comply with the Court's Order.

---

log does not tell Relator whether Hamot "reviewed, considered, or relied upon" any of such documents in forming its alleged belief that the various arrangements with Medicor complied with the statutes, which is what was required by the Court's order – indeed, Hamot has not produced a separate privilege log identifying documents specifically responsive to Interrogatory No. 1. Its July 8, 2014 privilege log, produced before the Court's Order was entered, does not describe the subject matter of any of the identified documents, much less indicate which, if any, of such documents were considered in forming Hamot's alleged good faith belief, nor does it identify any documents before June 26, 2000 or after November 29, 2007.  *See* Exhibit 6. Moreover, since Hamot is "precluded from relying on advice of counsel in connection with any claim or defense or introducing evidence of advice of counsel at trial," it could not introduce or rely in any way on any documents that it subsequently identifies on a privilege log.  Finally, the Court required that Hamot provide a complete answer by August 11, 2014, and Hamot has had more than enough time to identify those documents it considered in forming its alleged belief – indeed, if it did not know what documents it had considered, it would have had no basis for asserting that it had a good faith belief that the arrangements complied with the statutes.

12

Fed. R. Civ. P. 37(b)(2)(A) states that "[i]f a party … fails to obey an order to provide or permit discovery, …the court where the action is pending may issue further just orders," including the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

In the present case, Relator believes that one or more of the following sanctions would be appropriate. First, Hamot should be precluded from asserting or presenting any evidence at trial that it or any of its officers, employees, agents, or other persons acting on its behalf had any basis for a good faith belief that the arrangements with Medicor and the subsequent submission of claims complied with the Stark Law or the Anti-Kickback Statute. This remedy is precisely tailored to address the sanctionable conduct, since Hamot has willfully refused to provide Relator with any explanation of why it allegedly believed that **any** of the various arrangements with Medicor complied with such statutes. Indeed, as discussed above, Hamot has not pointed to a **single fact** (except possibly three letters containing advice of counsel that Hamot is precluded from introducing or relying on) that formed the basis for its supposed belief. Since Hamot, in response to a Court Order, has not pointed to a single admissible fact allegedly forming the basis for its supposed belief that all arrangements with Medicor at all times complied with Stark and AKS, it should not be allowed to assert that it had a basis for such belief at trial.

At a minimum, Hamot should be prevented from asserting or offering evidence at trial that it had any basis for such a good faith belief other than is expressly and specifically set forth

13

in its August 11, 2014 response to the interrogatory.  Thus, for example, Hamot should be precluded from asserting (i) that it had any basis to believe that any of the arrangements with Medicor complied with an exception under the Stark Law or a safe harbor under the Anti-Kickback Statute; (ii) that it had any basis to believe that any of the remuneration paid under any of the specific contracts with Medicor reflected fair market value for items or services actually provided; (iii) that it was ever told by counsel or anyone else that any of the arrangements with Medicor complied with the Stark Law or the Anti-Kickback Statute; (iv) that it had any basis for a belief that any particular contract between Hamot and Medicor complied with Stark or AKS; (v) that it reviewed, considered, or relied upon any document in forming its supposed good faith belief; (vi) that any particular individual at Hamot believed that any of the arrangements with Medicor complied with the Stark Law or AKS; or (vii) that Hamot had any independent understanding of the requirements of the Stark Law or AKS (other than advice of counsel, which it cannot rely upon) that justified a good faith belief that the arrangements with Medicor complied with such statutes.  It would be inequitable to allow Hamot to present evidence of such facts when it failed, in response to a Court Order entered after prolonged litigation of a motion to compel, to identify any such facts as the basis for its alleged good faith belief.

Additionally, given its contention that it has provided notice that it does not intend to rely on advice of counsel, and given its failure to identify any admissible facts relating to the alleged "role" played by such counsel or by any consultants retained by counsel, Hamot should be precluded from asserting or suggesting in any way that it had a good faith belief in the legality of its conduct based in whole or in part on any role played by counsel or by any consultants retained by counsel.

Finally, Hamot should be required to pay all expenses resulting from this dispute, including Relator's attorneys' fees and the costs of the Special Master relating to the filing of the motion to compel. This sanction is particularly fair, since Relator should not have to bear the burden of litigating a discovery dispute when Hamot has refused to comply with the final order resolving such dispute.

## CONCLUSION

For the reasons discussed above, the Court should sanction Hamot for its failure to comply with the Court's July 25, 2014 Order.

Respectfully submitted, this 22nd day of August, 2014.

/s/ Andrew M. Stone
Andrew M. Stone
(Pa. #35176)
STONE LAW FIRM, LLC
437 Grant Street Suite 1806
Pittsburgh. PA 15219
Phone: (412) 391-2005
Fax: (412) 391 -0853
astone@stones2.com

/s/ Jamie M. Bennett
Jamie M. Bennett
Ashcraft & Gerel
4301 Garden City Drive
Landover, Md. 20785
(301) 459-8400
(301) 459-1364
jbennett@ashcraftlaw.com

/s/ G. Mark Simpson
G. Mark Simpson
Georgia Bar No. 647725
Simpson Law Firm, LLC
110 Habersham Dr., Ste. 108
Fayetteville, GA 30214
(770) 371-5008
(678) 302-8721 (fax)
mark@marksimpsonlaw.com
Attorneys for the Plaintiff-Relator