# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| U.S. *ex rel*. Tullio Emanuele, | ) |
| | ) |
| Plaintiff/Relator, | ) |
| v. | ) C.A. No. 10-245 Erie |
| | ) |
| Medicor Associates, *et al*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**Conti, Chief District Judge**

## I. Background

The Hamot Medical Center of the City of Erie ("Hamot") filed a second motion to exclude the report and testimony of Kathy McNamara ("McNamara"). (ECF No. 298.) In the underlying matter, plaintiff/relator Tullio Emanuele ("plaintiff") contends that Hamot and Medicor Associates, Inc. ("Medicor" and together with Hamot, the "defendants") entered into a series of medical directorship arrangements that violated the Stark Act, 42 U.S.C. § 1395nn, and the Anti-Kickback Act, 42 U.S.C. § 1320a-7b. Both the Stark Act and the Anti-Kickback Act prohibit a health care entity from submitting claims to Medicare based upon referrals from physicians who have a "financial relationship" with the health care entity, unless a statutory or regulatory exception or safe harbor applies. 42 U.S.C. §§ 1395nn(a)(1); 1320a-7b(b). One of the critical issues to be determined at trial is whether the arrangements fall within the scope of

the fair market value exception, 42 C.F.R. §411.357(l), or the personal service arrangements exception, 42 C.F.R. § 411.357(d)(1).

The parties conducted extensive discovery concerning the applicability of those statutory exceptions. In McNamara's report, she examined the financial relationship between Hamot and Medicor and concluded that each of the medical directorship arrangements at issue was not commercially reasonable within the meaning of the fair market value and personal service arrangements exceptions because: (1) the parties failed to maintain adequate records to insure that they were receiving fair value for their services; (2) Hamot frequently pre-paid for services without obtaining adequate recourse protections; and (3) the agreements describing the arrangements were not in writing or were allowed to expire or lapse. (McNamara Report (ECF No. 235-1) at 6-7.) McNamara based her conclusions on her "29 years of experience in healthcare consulting" and her review of "hundreds of healthcare valuations including those of physician practices, ambulatory surgery centers, dialysis clinics, medical director arrangements, professional service agreements, physician employment agreements, on-call agreements, management service agreements, medical billing services, pharmacy services, mobile radiology services and medical leasing arrangements." (Id. at 2-3.)

During McNamara's deposition, defense counsel attempted to probe her prior consulting work to determine whether any of those consultations involved medical directorship arrangements that were similar to those between Hamot and Medicor. (McNamara First Depo. (ECF No. 235-2) at 43-45.) McNamara refused to disclose any facts about her prior work, explaining that she had spent the bulk of the past ten years consulting for the Department of Justice ("DOJ") and that she was subject to binding confidentiality agreements with the government that prevented her from revealing the names of any other hospitals that she had

recently examined. (Id. at 44-45.) Nevertheless, she continued to rely on those consultations, as well as her broad experience in the industry, as the basis for her expert opinion. (Id. at 126, 148.)

Hamot filed a motion to exclude McNamara's expert report and testimony, arguing that McNamara's refusal to answer questions about her prior consultations precluded Hamot from being able to effectively challenge and explore the foundation of her expert opinion. (ECF No. 234.) Hamot also asserted that McNamara's report contained impermissible legal opinion and was not based on a valid and testable methodology. (Id.) Following a Daubert hearing, the court granted Hamot's motion in part and denied it in part, as follows:

> McNamara will not be permitted to provide factual testimony concerning factual matters not otherwise entered into the record, corroborate evidence, or opine as to the credibility or veracity of other witnesses. McNamara will also not be permitted to offer legal argument, attempt to explain legal provisions of the Stark Law or Anti-Kickback Statute, or offer an opinion as to how the law should be interpreted. Finally, McNamara cannot offer an ultimate opinion as to whether a particular agreement is commercially reasonable or complies with the Stark Law and Anti-Kickback Statute.
>
> McNamara may testify about common practices and industry standards within the health care industry, her own experiences within that industry, and the steps that hospitals and health care institutions typically take when entering into similar financial relationships. She may also testify about what kinds of guidance are available to hospitals seeking compliance with federal regulations.

(Order (ECF No. 254) at 1-2.) The court ordered the parties to provide supplemental briefing on McNamara's failure to answer questions concerning her background and experience. (Id. at 2.)

At a second Daubert hearing held on May 3, 2016, defense counsel explained the type of information that defendants sought from McNamara:

> Now, in her deposition we sought to find out how it is she has experience in these types of relationships, establishing a cardiac center of excellence, the number of medical directorship agreements in place, the kind of medical director agreements, the record keeping requirements for these kinds of medical director agreements.

3

> We asked her, how is it that you know whether or not this type of an arrangement is appropriate? What is it in your experience as an accountant – remember, she didn't work as an administrator at hospitals – as an expert accountant, what is it in your experience that lets you opine about these specific kinds of relationships? And it was on all of those questions that we were stopped.
>
> So we don't know, for example, in those consulting cases whether she looked at cases involving a small hospital in a rural area, a large hospital in an urban area, a liver center, a cardiac center, a cancer center; whether those situations involved one medical director agreement or 20. And all of those things are relevant to knowing whether she knows whether these particular types of arrangements at a cardiac center of excellence at a place like Erie are industry standard.

(Daubert Hearing Transcript (ECF No. 270) at 11-12.) The court agreed that McNamara's inability to answer these types of questions was problematic:

> How do you give an opportunity for fair cross-examination if I can say, I have done something for ten years and I have a confidentiality agreement in every case and I can tell you that I have come across similar situations and based on my exposure to those situations they're similar and, therefore, this is my opinion?
>
> \* \* \* \* \* \* \*
>
> So you have to – you can't just say, trust me on this, and that is the problem I am having here. She has to actually be able to have sufficient description about what she did, the kinds of cases that she looked at in order to be fair to the other side to be able to probe were they similar circumstances.
>
> \* \* \* \* \* \* \*
>
> I don't think it is a question of knowing the name of the hospital. It is knowing the nature of the hospital and the nature of the agreements that were being looked at. … [T]here has to be something in a balance where she doesn't disclose the hospital or the advice that she gave, but can describe what she looked at, and it is my understanding that you need to know something about the sizes of the hospital, the nature of the agreements. So there has to be something more than just, I looked at agreements. Well, what were the nature of those?
>
> There has to be a way to provide an opportunity for the Defendant to prove this. Otherwise, she can't – she just can't get up there and say,

> these are similar circumstances. Well, what were the circumstances? That's what she has to answer to.

(Id. at 22-26.) See United States v. Mitchell, 365 F.3d 215, 245 (3d Cir. 2004) (noting that the ability to test the foundation of an expert's opinion by way of meaningful cross-examination is a basic element of the submission of expert evidence). Hamot was given an opportunity to re-depose McNamara for the limited purpose of exploring her background and experience with respect to the consultations she performed on behalf of the DOJ. (Id. at 18, 32-33.)

Defense counsel's questioning during McNamara's second deposition focused heavily on whether any of her prior consultations for the DOJ had involved hospitals that were designated as "cardiac centers of excellence." (McNamara Second Depo. (ECF No. 299-3) at 58, 60 64, 67, 70.) McNamara testified that at least four of the hospitals that she had analyzed had been designated as cardiac centers of excellence, but explained that her opinions were based on industry-wide standards applicable to all health care institutions, irrespective of whether they have earned a designation of excellence in a specialty area. (Id. at 38, 54, 64, 70, 150.) McNamara answered questions concerning the geographical location of each of the four identified hospitals, whether they were located in urban or rural areas, whether they were larger or smaller than Hamot, the kind of medical directorship arrangements that were in place at those hospitals, the record-keeping requirements in place in those hospitals, and whether she had ultimately concluded that those arrangements were commercially reasonable. (Id. at 80-122.) She reiterated that her conclusions were based on her entire body of experience, including industry periodicals, hours of continuing education, and her review of "1,200-plus medical directorship agreements." (Id. at 38, 54.)

Following McNamara's supplemental deposition, Hamot filed the instant second motion to exclude her report and testimony. Hamot contends that McNamara's report lacks foundation

5

because her deposition testimony "disclaimed *all* of the very experience that she refused to discuss at her first deposition, the same experience that underpinned the opinions in her Expert Report." (Hamot's Brief in Support of its Second Motion to Exclude the Report and Testimony of Kathy McNamara ("Hamot's Brief in Support") (ECF No. 299) at 1)) (emphasis in original). Hamot also revives two arguments that have been previously addressed by the court: that McNamara's testimony should be excluded for lack of a testable methodology, and that her testimony constitutes impermissible legal opinion. (Id.) As discussed below, none of these arguments warrants granting Hamot's motion.

## II. Hamot's Arguments

### A. Prior Consulting Work

Hamot first contends that McNamara "wholly disavowed her experience as a DOJ consultant and therefore the methodology disclosed in her Report" when she revealed that her knowledge of industry standards is partially derived from industry guidelines, industry periodicals, and attendance at continuing education courses. (Hamot's Brief in Support (ECF No. 299) at 4-5.) This contention is inaccurate. McNamara has always maintained that her expert opinion was based upon her knowledge of industry standards *and* her application of those standards to particular health care arrangements. (McNamara Second Depo. (ECF No. 299-3) at 54, 56.) She testified that her understanding of industry standards derives from her extensive work within the health care industry for the past thirty years, while her application of those standards is influenced by the facts underlying each particular arrangement that she has evaluated. (Id.) McNamara explained that she relied on both of these elements in reaching her conclusions:

> Q: And you're not relying on your experience in consulting with the DOJ in rendering your opinions in this case. You said that in response to Ms. Bennett's questions; correct?
>
> A: I am relying on some of my experience, not solely on the experience – my DOJ experience. I'm relying on the experience of my team. I'm relying on the experience of industry standards that I have studied for twenty years and continue to study and changes that are occurring in the industry. I'm relying on that whole body of knowledge . . . to form the opinions in my report.

(Id. at 170.)

Rather than disavowing her experience with the DOJ, McNamara supplied much of the precise information at her second deposition that she did not provide at her first deposition. She testified that at least four of the hospitals that she analyzed for the DOJ were cardiac centers of excellence. (Id. at 80-125.) She indicated whether each was larger or smaller than Hamot, located in a rural or metropolitan area, the titles of some of the medical directorship agreements in place, the time frame of her consultation, the competitive market for the hospital's services, the typical manner in which payments were submitted and processed, whether the hospitals required signed agreements, whether they kept contemporaneous time records of services provided, and whether she had ultimately concluded that the arrangements were commercially reasonable. (Id.) These answers satisfied the court's directive to supply "enough specificity to allow meaningful cross-examination . . . without revealing identifying information concerning those hospitals that she reviewed subject to a confidentiality agreement with the Department of Justice." (Order (ECF No. 267) at 1.) Hamot's dissatisfaction with the content of McNamara's testimony goes to the weight of her expert opinion, rather than its admissibility.

### B. Reconsideration of Prior Rulings

Hamot's remaining arguments are most accurately characterized as a request for reconsideration. The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). A motion for reconsideration under Federal Rule of Civil Procedure 59(e) must therefore rely on one of three grounds: (1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995). A motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already rightly or wrongly made. Williams v. Pittsburgh, 32 F.Supp.2d 236, 238 (W.D. Pa. 1998). Litigants are cautioned to "'evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant.'" Waye v. First Citizen's Nat'l Bank, 846 F.Supp. 310, 314 n. 3 (M.D. Pa. 1994) (quoting Atkins v. Marathon LeTourneau Co., 130 F.R.D. 625, 626 (S.D. Miss. 1990). Motions for reconsideration should not relitigate issues already resolved by the court and should not be used to advance additional arguments which could have been made by the movant before judgment. Reich v. Compton, 834 F.Supp. 753, 755 (E.D. Pa. 1993) *aff'd in part*, *rev'd in part*, 57 F.3d 270 (3d Cir. 1995).

The court already determined that none of the parties' expert witnesses, including McNamara, may offer legal analysis or conclusions with respect to the ultimate issue of the commercial reasonableness of the medical directorship arrangements at issue. (Order (ECF No. 254) at 1) ("McNamara will also not be permitted to offer legal argument, attempt to explain legal provisions of the Stark Law or Anti-Kickback Statute, … offer an opinion as to how the

law should be interpreted … , [or] offer an ultimate opinion as to whether a particular agreement is commercially reasonable or complies with the Stark Law or Anti-Kickback Statute."). The court parsed McNamara's expert report on a line by line basis and explicitly struck those portions that ventured into the arena of legal analysis. (Daubert Hearing Transcript (ECF No. 263) at 27-59.) On the other hand, the court held that McNamara could testify about "common practices and industry standards within the health care industry, her own experiences within that industry, and the steps that hospitals and health care institutions typically take when entering into similar financial relationships." (Order (ECF No. 254) at 1.) Hamot did not offer any basis for the court to reconsider these conclusions.

Hamot's argument that McNamara's expert report does not rely on a testable methodology was also rejected:

> Then there is another objection that she used impermissible methodology when attempting to validate whether the parties' obligations under the medical directorship agreements were fulfilled. She wouldn't explain what validation meant in this context.
>
> This is an experiential discussion of standards and practices, and I think as we go through the opinion we will see what can come in and what is not permissible and if it's something she is relying on based on experience, experiential background, that's something that might be appropriate. Even if there is not a particular methodology that one can identify, if it's based on experience and there is no other basis being raised to show that there was an appropriate methodology that could be – that should have been used, the Court would have to overrule that [objection] on that type of basis.

ECF No. 263, at 26-27. This ruling was based on well-established precedent indicating that, with respect to non-scientific expert testimony, the "relevant reliability inquiry concerns may focus upon personal knowledge or experience," Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150-52 (1999), rather than "a testable methodology." Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd., 286 F.R.D. 266, 272 (W.D. Pa. 2012) (citing Voilas v. General Motors Corp., 73

9

F.Supp.2d 452, 460 (D.N.J. 1999) (noting that "the Daubert factors do not always fit neatly into or easily translate in the context of nonscientific testimony.")). Such is the situation here, where McNamara's experienced discussion of standards and practices in the health care industry may prove helpful to the average juror, "even if doing so does not require employing any particular methodology but simply a straightforward review" of the pertinent standards. Id. at 271-72 (citing Voilas, 73 F.Supp.2d at 461).

III. Conclusion

Each of the arguments raised in Hamot's second motion to exclude McNamara's testimony and expert report lack merit and there is no basis to reconsider rulings that were already made. Hamot's motion is denied.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

Dated: March 21, 2017